UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21449-CIV-LENARD/GARBER

**ALVI ARMANI MEDICAL, INC.**
and **DR. ANTONIO ALVI ARMANI,**

       Plaintiffs,

vs.

**PATRICK HENNESSEY** and **MEDIA
VISIONS, INC.,**

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RENEWED MOTION TO DISMISS COMPLAINT (D.E. 20)**

**THIS CAUSE** is before the Court on Defendants' Renewed Motion to Dismiss

Complaint ("Motion," D.E. 20; see also D.E. 21 (memorandum of law)), filed on July 14,

2008. On September 16, 2008, Plaintiffs filed their Response to the Motion ("Response,"

D.E. 31). On September 26, 2008, Defendants filed a reply ("Reply," D.E. 35). Having

reviewed the Motion, the Response, the Reply and the record, the Court finds as follows:

**I.     Background**

On May 19, 2008, Plaintiffs Dr. Antonio Alvi Armani ("Dr. Armani") and Alvi

Armani Medical, Inc. ("Armani Medical") commenced this action with the filing of the

Complaint against Defendants Patrick Hennessey ("Hennessey") and Media Visions, Inc.

("Media Visions"). (See D.E. 1.) The Complaint alleges, inter alia, that Dr. Armani is a

physician specializing in "hair restorations and hair transplants," and that he founded Armani

Medical.  (Id. ¶¶ 9, 14.)  The Complaint further alleges that, upon information and belief,

Defendant Media Visions is the owner, host, and publisher of a website called the "Hair

Restoration Network," which is identified as being "dedicated to providing information to

the consumer public about the hair restoration and transplant industry," and that such website

is controlled by Defendant Hennessey.  (Id. ¶ 21.)  According to the Complaint, Defendants

have engaged in false, deceptive and unfair business practices in knowingly posting

disparaging and false statements about Dr. Armani and Armani Medical on the website and

by creating the impression that posters on the website are bona fide disgruntled patients of

Plaintiffs, when in fact the posters are either fictitious persons or undisclosed affiliates of

doctors who are on the website's recommended list of "pre-screened" doctors.  (Id. ¶ 30.)

The Complaint also asserts that as a result of such posts, many individuals have decided not

to use the services of Plaintiffs.  (Id. ¶¶ 71-72.)  Based on these and additional allegations in

the Complaint, Plaintiffs assert claims for Deceptive and Unfair Trade Practices

("FDUTPA") (Count I); Defamation (Count II); and for Temporary and Permanent Injunctive

Relief (Count V).[1]

**II.    Defendants' Motion to Dismiss**

In their Motion, Defendants first argue that the Court must treat Plaintiffs' claims

under FDUTPA and for defamation as a single claim because both claims arise out of the

same set of operative facts.  (D.E. 21 at 2-4.)  Next, Defendants argue that Plaintiffs have

---

[1] On September 17, 2008, Counts III and IV were dismissed without prejudice from the
Complaint.  (See D.E. 30; see also D.E. 32.)

failed to comply with Section 770.01 of the Florida Statutes because Plaintiffs have not

alleged that they provided the requisite five days' notice before commencing their defamation

claim against Defendants, nor can they comply with such prerequisite, as they failed to

provide timely notice under the statute.  (Id. at 5-7.)  Next, Defendants argue that, in any

event, Plaintiffs have failed to identify the allegedly defamatory statements with sufficient

specificity in order to state claim.  (Id. at 7-9.)  Additionally, Defendants argue that Media

Visions is immune under the Communications Decency Act ("CDA") because the alleged

defamatory statements were made by third parties.  (Id. at 9-10.)  Defendants also argue that

Media Vision's forums are not "trade or commerce" under FDUTPA, and thus Count I of the

Complaint must be dismissed.  (Id. at 11-12.)  Finally, Defendants argue that Count V seeks

an impermissible prior restraint on speech and should be dismissed as inconsistent with the

First Amendment to the United States Constitution.  (Id. at 16-17.)

In their Response, Plaintiffs argue that Plaintiffs have alleged an independent basis

for their FDUTPA claim, namely, Defendants' deceptive and misleading conduct, separate

and apart from defamatory statements.  (D.E. 31 at 4-5.)  Next, Plaintiffs argue that Section

770.01 of the Florida Statutes is not applicable to internet chat forums such as that at issue

here.  (Id. at 5-9.)  In addition, Plaintiffs argue that they have adequately pled a defamation

claim and have satisfied Federal Rule of Civil Procedure 8(a).  (Id. at 9-10.)  Plaintiffs further

argue that Defendants are not entitled to immunity under the CDA, in part because Plaintiffs

argue that Defendants have themselves issued false and misleading statements regarding

3

Plaintiffs, and that FDUTPA applies to Defendants and their alleged conduct. (Id. at 10-16.)

Finally, Plaintiffs argue that they have not yet moved for injunctive relief, and thus

Defendants' First Amendment argument is inappropriately decided on the instant Motion.

(Id. at 16-17.)

In their Reply, Defendants in large part reiterate the arguments set forth in their initial

pleading. (See D.E. 35.)

### III.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b), a defendant may move for

dismissal of a claim based on one or more of seven specific defenses, including failure to

state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In reviewing

a motion to dismiss, the Court accepts the facts alleged in the Complaint as true, and

construes all reasonable inferences therefrom in the light most favorable to Plaintiffs. Bank

v. Pitt, 928 F.2d 1108, 1109 (11th Cir. 1991).   To survive a motion under Rule 12(b)(6), a

claim need not contain detailed factual allegations, but must provide sufficient grounds to

show more than a merely speculative entitlement to relief. Bell Atlantic Corp. v. Twombly,

127 S.Ct. 1955, 1964-65 (2007); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231-32

(11th Cir. 2000).

### IV.    Analysis

#### A.    FDUTPA Claim (Count I)

Defendants first appear to argue that Plaintiffs' FDUTPA claim should be dismissed

because it arises from the same operative facts as their defamation claim.  Nonetheless, "the mere fact that conduct gives rise to more than one type of claim does not prevent it from being a[n] [F]DUTPA violation."  Army Aviation Heritage Found. & Museum, Inc. v. Buis, 504 F. Supp. 2d 1254, 1262-1263 (N.D. Fla. 2007) (noting that on summary judgment, statements that were found to be defamatory also constituted violations of FDUTPA, while recognizing that concurrent violations of both causes of action will not necessarily be found in every case) (citing Urling v. Helms Exterminators, 468 So. 2d 451 (Fla. 1st Dist. Ct. App. 1985)).  Accordingly, the Court does not find dismissal of Plaintiffs' FDUTPA claim on this basis to be appropriate at this stage of the litigation.

Defendants' second argument with respect to Plaintiffs' FDUTPA claim is that it must be dismissed because Media Vision's forums are not "trade" or "commerce" under FDUTPA. Pursuant to FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of *any trade or commerce*" are unlawful.  Fla. Stat. § 501.204(1) (2008) (emphasis added).  "Trade or commerce," as used in the statute, is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated," and includes "the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."  Fla. Stat. § 501.203(8).  As such language clearly indicates, the definition of "trade or commerce" is quite broad.  Moreover, FDUTPA

requires that its provisions "be construed liberally" to, inter alia, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

Given these provisions of FDUTPA, and further accepting the facts alleged in the Complaint as true and construing all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court does not find it appropriate to dismiss, at this stage of the litigation, Plaintiffs' FDUTPA claim on the basis that Media Vision's forums do not involve "trade" or "commerce" as contemplated by FDUTPA. In the Complaint, Plaintiffs have alleged, inter alia, that Defendants, through their website, provide information to the consumer public about the hair restoration and transplant industry (see, e.g., D.E. ¶¶ 21-25); that potential patients heavily rely upon information provided in the website (id. ¶¶ 27-29); that Defendant Hennessey receives a monthly fee from hair transplant doctors who are placed on a "recommended list" of doctors on the website (id. ¶ 34); that, as a result of pressure from Plaintiffs' competitors, Defendants knowingly posted and/or permitted to be posted disparaging and false statements about Plaintiffs and left them posted for extended periods of time, purposefully creating damage to Plaintiffs' reputation (id. ¶¶ 30, 35-36); that Defendants failed to verify the identity of certain posters on the website (id. ¶¶ 50-51, 57-61); and that Plaintiffs' business and professional reputation was damaged in that many individuals decided not to use Plaintiffs' services after viewing the subject website (id. ¶¶

66-74). Based on these and additional allegations in the Complaint, the Court finds that Plaintiffs have adequately alleged that Defendants have engaged in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" through "providing ... [a] ... service," and that such allegations are sufficient to satisfy the "trade or commerce" language contained in FDUTPA and defeat dismissal. See Fla. Stat. §§ 501.203, 501.204.

Finally, Defendants argue that the CDA makes Media Visions immune from suit under FDUTPA to the extent that Plaintiffs' claim is premised on statements posted by users of Media Visions' forum, because Media Visions is a provider of an "interactive computer service" as contemplated by 47 U.S.C. § 230. (D.E 21 at 9-10.) Pursuant to the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The purpose of the CDA is to establish "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321-1322 (11th Cir. 2006) (citations omitted). Although the majority of federal circuits have held that such immunity is "broad," the statutory immunity provided for under the CDA "does not apply without limitation." Id. (citing 47 U.S.C. § 230(e)(1))).

Here, Plaintiffs do not dispute that Media Visions is an "interactive computer service" for purposes of the CDA; rather, they argue that Media Visions is not immunized under the

7

CDA because Plaintiffs have alleged that Media Visions itself created tortious content. (See D.E. 31 at 10-13.) The Complaint alleges, inter alia, that Media Visions "creat[ed] the impression that the posters are bona fide disgruntled patients of Plaintiffs when in fact the posters are either fictitious persons (and are the alter egos of Defendants) or are undisclosed affiliates of doctors who are on the Website's 'recommended' list of 'pre-screened' doctors" (Complaint ¶ 30), and that, through its agents, Media Visions "refused to comply with the standard industry practice of verifying the identity of posters who have been called into question" (id. ¶ 60); publicly stated that Dr. Armani is unethical and that Plaintiffs prioritize revenues over patient care (id. ¶ 61); and failed to disclose to the public their own sponsor relationship with Plaintiffs' competitors (id. ¶ 62), misleading the public (id. ¶ 65). Accepting these allegations as true and construing all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court concludes that, at least for purposes of this Motion, Plaintiffs' FDUTPA claim is not premised solely on "information provided by another information content provider," *i.e.,* statements posted by users of Media Visions' forum. See 47 U.S.C. § 230(c)(1). As such, Defendant Media Visions may not be entitled to immunity under the CDA, and dismissal of Plaintiffs' FDUTPA claim against Media Visions on this ground is therefore inappropriate. See Whitney Info. Network, Inc. v. Xcentric Ventures, LLC, 199 Fed. Appx. 738, 744 (11th Cir. 2006) (where complaint contained allegations illustrating defendants' involvement in creating or developing the alleged defamatory content of consumer complaints posted on their website, district court

erred in dismissing complaint).[2]

### B.    Defamation Claim (Count II)

With respect to Plaintiffs' defamation claim, Defendants argue that such claim should be dismissed because Plaintiffs failed to comply with Section 770.01 of the Florida Statutes, which requires a plaintiff to serve written notice on a defendant specifying the alleged defamatory statements and the article or broadcast in which they were made  at least five (5) days "[b]efore any civil action [of a libel or slander] is brought for publication or broadcast, in a newspaper, periodical, or *other medium*."  Fla. Stat. § 770.01 (2008) (emphasis added). Defendants contend that notice was required in this case because the "other medium" language used in Section 770.01 includes the internet and internet forums such as the website at issue in this case.  Plaintiffs, however, argue that the "other medium" language employed in Section 770.01 was intended to include solely television and radio broadcasting stations, and thus no notice was required in this case.

Whether the internet is included as part of the "other medium" language used in Section 770.01 is an issue that has not been definitively resolved by the Supreme Court of Florida or by any court in this Circuit.  Nonetheless, Defendants cite two Florida lower court cases which touch upon this issue, and which this Court finds to be persuasive.  In Canonico v. Calloway, 35 Med. L. Rptr. 1549 (Fla. Cir. Ct. Feb. 22, 2007), the plaintiffs claimed that

---

[2]  The Court notes that Defendants have not argued that Hennessey is entitled to immunity under the CDA, although Plaintiffs have included an argument that Hennessey is not entitled to immunity under the CDA in their Response.

they were defamed by statements made "on television and/or the internet," which included

a story that was posted on the defendants' internet website.  Id. at 1550; see also id. at 1551.

The court applied Section 770.01 and found that the plaintiffs did not comply with the five-

day notice period therein; thus, the court concluded that it lacked subject matter jurisdiction

on the plaintiffs' defamation claim.  See id. at 1550-51.  Further, in  Holt v. Tampa Bay

Television, Inc., 34 Med. L. Rptr. 1540, 1542 (Fla. Cir. Ct. Mar. 17, 2005), aff'd by 976 So.

2d 1106 (Fla. 2d. Dist. Ct. App. 2007), another defamation case, the plaintiff asserted that

Section 770.01 did not apply to stories published on the internet, and therefore, no notice of

the alleged defamatory statements was required.  The court, however, held that the phrase

"other medium" in Section 770.01 includes the internet.  Id.  In reaching this conclusion, the

court reasoned that it could find no legitimate justification for interpreting the broad term

"other medium" to exclude the internet, which, as the court found, "has become a recognized

medium for communication to the masses."  Id.

In contrast to the cases cited by Defendants, all of the cases cited by Plaintiffs in

support of their argument -- with the exception of Zelinka v. Americare Healthscan, Inc., 763

So. 2d 1173 (Fla. 4th. Dist. Ct. App. 2000) -- pre-date, by at least a decade, the use of the

internet by the general public, and do not directly address whether the internet is considered

in the category of "other medium" as contemplated by Section 770.01.  Moreover, with

regard to the Zelinka case, Plaintiffs misrepresent the court's holding by stating that the

Zelinka court declined to expand the "other medium" language used in Section 770 to the

10

internet.  (See D.E. 31 at 7.)  Instead, the Zelinka court expressly stated that it "need not

reach the issue of whether the internet is a 'medium' within the meaning of Section 770.01,"

and held only that the notice requirement in Section 770.01 could not be extended "to a

private individual who merely posts a message on the [internet] board."  See Zelinka, 763 So.

2d at 1175.  As Plaintiffs in this case are not suing a "private individual who merely posts

a message on the board," Zelinka is inapposite here.

Rather, in this case, Plaintiffs have brought suit against a company that allegedly

owns, hosts and publishes the offending website, which provides information to the

consumer public, and against the principal owner of that website, who is alleged to control

the website's operations.  Moreover, the Complaint alleges that Defendants themselves had

at least some part in making defamatory statements against Plaintiffs, by posting comments

from fictitious persons and by "publicly stating that Dr. Armani is unethical and making other

statements . . . that Plaintiffs prioritize revenues over patient care."  (See, e.g., D.E. 1 ¶ 30,

61.)  Under these circumstances, and applying the logic employed by more recent cases cited

by Defendants, the Court finds that Plaintiffs were required to give Defendants notice of their

defamation claim in accordance with Section 770.01.  As Plaintiffs do not dispute that they

did not provide Defendants with such notice, Count II of the Complaint must be dismissed.

### C.    Temporary and Permanent Injunctive Relief (Count V)

Finally, Defendants seek dismissal of Count V of the Complaint on the basis that it

seeks a impermissible prior restraint on speech.  In Count V, Plaintiffs seek "a temporary and

permanent injunction restraining Defendants from publishing any disparaging and false statements about Plaintiffs." (D.E. 1 ¶¶ 109-112 and "wherefore" clause.) In their Response, Plaintiffs represent that they are not seeking a "prior restraint" by prohibiting Defendants' future speech, and state that, in fact, they have not yet sought injunctive relief because "Defendants took down from the Website the disparaging and false statements about Plaintiffs." (See D.E. 31 at 16-17.) Although not entirely clear from the Complaint or Plaintiffs' Response, it appears that Plaintiffs concede Defendants' argument that a defendant may not be enjoined from making defamatory statements due to First Amendment concerns, and this Court agrees. In any event, as discussed above, Plaintiffs' defamation claim has been dismissed, and thus Plaintiffs may not seek injunctive relief on that claim.

With regard to their FDUTPA claim, however, Plaintiffs argue that equitable injunctive relief is appropriate in cases involving FDUTPA claims. (See id.) Indeed, courts in this Circuit have held that "FDUTPA offers two types of remedies: equitable relief in the form or declaratory or injunctive relief pursuant to Fla. Stat. 501.211(1) or 'actual damages' pursuant to Fla. Stat. 501.211(2)." See Eclipse Med. v. Am. Hydro-Surgical Instruments, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999). Thus, to the extent Count V seeks declaratory or injunctive relief pursuant to FDUTPA, the Court does not find that dismissal of Count V is appropriate at this stage of the litigation.

**ORDERED AND ADJUDGED** that:

1.      Defendants' Renewed Motion to Dismiss (D.E. 20; see also D.E. 21), filed on

July 14, 2008, is **GRANTED in part and DENIED in part as stated in this Order.**

2.      Plaintiffs' claim for defamation (Count II of the Complaint) is hereby **DISMISSED with prejudice.**

3.      Within ten (10) days of the date of this Order and to avoid confusion of this Court's docket, Plaintiffs shall file an Amended Complaint eliminating their claim for defamation in accordance with this Order, and eliminating the previously-dismissed claims for trade libel (Count III) and tortious interference (Count IV) in accordance with the Court's September 17, 2008 Order dismissing those claims without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of December, 2008.

_____

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**